UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ALBERTO GALARZA,

                    Plaintiff,

-against-

JO ANNE B. BARNHART,
Commissioner of Social Security

                    Defendant.
------------------------------------------------------------- X

04 CV 3881 (ARR)(CLP)

NOT FOR
ELECTRONIC OR PRINT
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiff Alberto Galarza brought this action pursuant to 42 U.S.C. §§ 405(g) to review defendant Social Security Commissioner Barnhart's adoption of the decision of the Administrative Law Judge ("ALJ") finding plaintiff not entitled to disabled adult child's insurance benefits under Title II of the Social Security Act. Defendant has moved for judgment on the pleadings pursuant to Rule 12(c). Plaintiff has filed no response. For the reasons stated below, the court grants defendant's motion for judgment on the pleadings.

## BACKGROUND

Plaintiff filed an application for disabled adult child's insurance benefits on his deceased father's account on July 10, 2002. Tr. 60-62. The application was denied. Tr. 40, 41-44. Pursuant to plaintiff's request (Tr. 45), an administrative hearing was held on February 11, 2004 before ALJ Jane Polisar, at which time plaintiff appeared pro se and testified. Tr. 26-39. ALJ Polisar considered the case de novo and, on February 18, 2004, found that the plaintiff was not under a disability prior to May 16, 1980, when plaintiff attained age 22 and, therefore, was not

1

entitled to disabled adult child's benefits. Tr. 8-16. This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 16, 2004. Tr. 3-5.

## DISCUSSION

To be eligible for disabled adult child's insurance benefits based on the record of a wage earner, a claimant must establish that he is under a disability that began before he attained the age of twenty-two, and that the disability continued to the time of the application for benefits. 42 U.S.C. § 402(d)(1). The claimant must also show that: (1) he is the child of the insured person who is entitled to old age or disability benefits or who has died; (2) he is dependent on the insured; (3) he has filed an application, and (4) he is unmarried. Id. As with other Title II cases, disability is defined as an inability to engage in any substantial gainful activity by reason of a medically determinable impairment which can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

The Commissioner has established a five step process for evaluating disability claims. See 20 C.F.R. § 404.1520. The Second Circuit has characterized this analysis as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

2

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)) (brackets and alteration in original). The plaintiff has the burden of establishing disability on the first four steps of this analysis. On the fifth step, however, the burden shifts to the Commissioner. See Blueband v. Heckler, 730 F.2d 886, 891 (2d Cir. 1984).

The court's role in reviewing the decisions of the Social Security Administration ("SSA") is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making his determination and whether that determination is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is defined as "more than a mere scintilla[:]" it is evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

At step one of the sequential analysis, ALJ Polisar found that the record does not establish that plaintiff engaged in substantial gainful activity prior to May 16, 1980, his 22nd birthday. Tr. 12. At step two, the ALJ found that plaintiff's seizure disorder was a severe impairment. Id. At step three, the ALJ found that plaintiff's impairment did not meet or equal a listed impairment. Id. The ALJ then determined that prior to May 16, 1980, plaintiff had the residual functional capacity to stand or walk for up to six hours a day, lift or carry up to one hundred pounds occasionally and up to fifty pounds frequently, but was unable to operate machinery, or work near heights or other potentially hazardous conditions. Tr. 14. At step four, the ALJ found that plaintiff had no relevant work prior to May 16, 1980. At step five, the ALJ found that plaintiff could have done work in the national economy. Tr. 14-15.

The ALJ's finding that plaintiff retained the functional capacity to do heavy work limited by his inability to operate machinery or work near heights or other hazardous conditions was supported by substantial evidence. In fact, her conclusion was based, in part, on plaintiff's subsequent disability report submitted with his 2002 application for benefits. In that document, plaintiff reported that at his job as an airport luggage handler, which he held from 1983 to 1984, he walked for 3 hours each day, stood for 6-8 hours each day, stopped and kneeled from 6-8 hours a day, lifted 100 pounds on at least one occasion, and frequently lifted fifty pounds or more. See Tr. 86. As the ALJ noted, the record contains no medical evidence pertaining to the period before plaintiff turned twenty-two. See 42 U.S.C. § 423(d)(3) (impairment must be shown by medically acceptable clinical and laboratory diagnostic techniques). It is plaintiff's burden to provide evidence from acceptable medical sources in order to establish the existence of a medically determinable impairment. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a) and 404.1512. Plaintiff has not met his burden.

Although certain records indicate that plaintiff alleges that he suffered seizures at age eleven, see Tr. 107, 146, 148, in medical records prepared in 1991, also from Brooklyn Hospital Center, both a neurologist and a physician at the medical clinic reported that plaintiff did not start having seizures until 1985. Tr. 149, 150. The earliest medical evidence in the record dates from July 22, 1987, and indicates that plaintiff had been hospitalized following an overdose of Dilantin. Tr. 106. Dr. Redford noted only that plaintiff had "a long history of poorly evaluated and poorly treated seizure disorder." Id. Plaintiff was not treated again until 1991, when he began getting treatment at the neurology and medical clinics of the Brooklyn Hospital Center. Tr. 107; see Tr. 149-53. Treatment records also indicate that plaintiff stated that his headaches –

4

also an alleged basis for his disability – did not begin until 1984, at the age of 26 years. Tr. 149.

Nothing in the record suggests that medical evidence exists relating to the period before May 16, 1980. In fact, at his hearing, plaintiff testified that he had attempted to obtain records predating those in the record from Kings County Hospital and Puerto Rico but was told that those records had been destroyed.[1] Tr. 30. The ALJ indicated that the SSA attempted to obtain those same records and was unsuccessful. Tr. 31.[2] Plaintiff's disability report submitted with his application for benefits did not indicate that plaintiff received any treatment before 1985. Tr. 87-90. Moreover, in the report that accompanied his application, plaintiff indicated that he became unable to work only on July 1, 1989. Tr. 85. In addition, plaintiff worked from 1983 to 1984, from 1988-1989, and again from 1990-1991. Tr. 86, 98; see Tr. 80. According to the disability report submitted by plaintiff with his 2002 application for benefits, he worked for "Air La Carte" for eight to nine months, at two in-flight kitchens for a total of five months, from October 1988 to March 1989, and at "Borinquen grocery store" for 17 months between 1990 and 1991.[3] Tr. 98.

---

[1] The court also notes that plaintiff's disability report submitted with his application for benefits indicates that plaintiff received treatment at Kings County Hospital beginning in April 1985. It is unclear whether plaintiff was treated at Kings County Hospital during the period at issue here, that is, prior to May 16, 1980.

[2] The court also notes that before his hearing, plaintiff was provided a list of lawyers to contact for assistance with his claim. Although plaintiff contacted a lawyer, he refused the attorney's suggestion that he adjourn his hearing to allow the attorney an opportunity to review his case. Tr. 28. The ALJ warned plaintiff that, due to the lack of medical records pre-dating his 22nd birthday, he would be better off adjourning to permit the lawyer the opportunity assist him. Tr. 28-29, 31. Despite the ALJ's warning, plaintiff chose to proceed with the hearing on February 11, 2004. Tr. 31.

[3] At his hearing, petitioner testified that he worked at an in-flight kitchen for only three months in 1982, worked with cargo at the airport for two months thereafter, and finally worked at the grocery store for five months. Tr. 35-38.

Thus, even assuming plaintiff was disabled prior to his 22nd birthday, he was able to work subsequently.

In making her residual functional capacity determination, the ALJ also considered plaintiff's subjective complaints of pain and found that such complaints did not support the allegations of onset of disability prior to age 22. Tr. 14. The ALJ noted that plaintiff stated he had been able to work until July 1, 1989 and considered his work history. Id. Plaintiff did not allege how his condition prevented him from working prior to May 16, 1980. The ALJ had the discretion to evaluate plaintiff's credibility in light of the evidence in the record. Kendall v. Apfel, 15 F.Supp.2d 262, 267 (E.D.N.Y. 1998). "It is the function of the [Commissioner], not [the reviewing courts], to . . . appraise the credibility of the witnesses, including the claimant." Aponte v. Secretary, Dep't Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted).

Having determined that plaintiff had the exertional capacity to perform heavy work with some limitations, the ALJ correctly found that plaintiff was able to do other work at step five. Tr. 14-15. The ALJ relied upon the medical-vocational guidelines as a framework to determine that plaintiff was not disabled. Id. The Commissioner's burden at step five of the sequential evaluation process is generally satisfied by referring to the applicable rule of the medical-vocational guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2. Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). Here, since plaintiff had non-exertional limitations, the ALJ properly relied on the grids as a framework. See Bapp, 802 F.2d at 604. The ALJ considered Rule 204.00, which states that an individual who is able to do heavy work is able to do substantial work in the national economy at all skill levels and physical demand levels. Tr. 15;

See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 204.00. The ALJ found that plaintiff's inability to work near heights or operate hazardous machinery did not significantly affect his inability to perform the range of unskilled work at multiple exertional levels described in the medical-vocational guidelines. Tr. 14.

The ALJ properly found that plaintiff was not disabled because he retained the ability to do work which exists in significant numbers in the national economy prior to May 16, 1980, his 22nd birthday. The Commissioner applied the correct legal standards, and there is substantial evidence supporting her factual determinations.

## CONCLUSION

For the reasons discussed above, the defendant's motion for judgment on the pleadings is granted. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: August 17, 2005
Brooklyn, New York

SERVICE LIST:

*Pro Se Plaintiff:*
Alberto Galarza
P.O. Box 2847
Perth Amboy, New Jersey 08862

*Counsel for Defendant:*
Margaret A. Donaghy
Special Assistant U.S. Attorney
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201